FILED ___RECEIVED
___ENTERED ___SERVED ON
COUNSEL/PARTIES OF RECORD

2003 OCT 20  P 3: 10

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY:_____ _____ DEPUTY

1

2   **COMP**
ANDRAS F. BABERO, ESQ.
3   Nevada Bar No.001658
LAW OFFICES OF ANDRAS F. BABERO
4   8290 West Sahara Avenue, Suite 150
Las Vegas, Nevada 89117
5
Attorney for Plaintiff
6

7               IN THE UNITED STATES DISTRICT COURT
8
9                   FOR THE DISTRICT OF NEVADA

10
                                              CV-S-03-1314-LRH-PAL
11   IRUKA F. ATAMOH,

12
13                   Plaintiff                )
                                              )
14   v.                                       )   Complaint
                                              )
15   COMMUNITY COLLEGE OF SOUTHERN            )
     NEVADA, a part of the University Community )
16   College System of Nevada; THOMAS M.      )
17   PEACOCK, in his individual capacity, and in his )
     capacity as an employee and agent of     )
18   COMMUNITY COLLEGE OF SOUTHERN            )
     NEVADA; WENDY TOMLINSON, in her          )
19   individual capacity, and in her capacity as an )
20   employee and agent of COMMUNITY COLLEGE  )
     OF SOUTHERN NEVADA,                      )
21                                            )
                   Defendants                 )
22   _____)

23                   **PRELIMINARY STATEMENT**
24
25   1.  This action arises under Title VII of the Civil Rights Act of 1964, 42 USCA
26       Sec. 2000 *et seq.* ("Title VII"), 28 USCA Sec. 1343, 42USCA sec 2000 e-5
27       (f), and the Civil Rights Act of 1866.
28

                                1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATUS OF THE PARTIES

2. The Plaintiff, Iruka F. Atamoh, is a bi-racial woman, born in Germany, of Bulgarian and Nigerian heritage who resides in the city of Las Vegas, state of Nevada.

3. Defendant, Community College of Southern Nevada ("CCSN"), is an entity of the state of Nevada, and part of the University and Community College System of Nevada ("UCCSN"). Defendant, Thomas M. Peacock ("Peacock"), is employed by CCSN, and acted in his individual capacity, as well as in his capacity as an employee of CCSN. Defendant, Wendy Tomlinson ("Tomlinson"), is an employee of CCSN, and acted in her individual capacity, as well as in her capacity as an employee of CCSN. Defendants Peacock and Tomlinson are residents of the state of Nevada.

4. At all times relative to this complaint, the Defendants were engaged in an industry affecting commerce, and Peacock and Tomlinson (collectively, the "Individual Defendants") worked at CCSN affecting interstate commerce.

5. At all times since November 27, 1997, CCSN has employed fifteen or more employees and has been an employer within the meaning of Title VII, and is a part of the government of the state of Nevada.

6. On or about November 20, 2002, the Plaintiff filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), and the Nevada Equal Rights Commission ("NERC"), charging Defendants with discriminating against Plaintiff on the basis of race, color, and retaliation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.  The charge was filed within one hundred and eighty days of the discriminatory employment practices described in this complaint.

8.  On or about July 21, 2003, the EEOC sent Plaintiff written notification of her right to sue Defendants, which was received on or about July 24, 2003.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.  The allegations contained facts common to all allegations in paragraphs 1-8, inclusive, of this complaint, are incorporated by reference into this paragraph

10. Plaintiff was hired by CCSN on or about November 24, 1997, as a classified employee in the Human Resources Department at CCSN.

11. Plaintiff was placed on a routine probationary employment upon being hired by CCSN.  This probationary period is designed to determine whether an employee should properly continue as a CCSN employee.  A CCSN classified employee is provided with limited types of benefits during the probationary period, and also permits an employee to be terminated, at any time, with or without cause.

12. No other multi-racial employees were employed in the Human Resources Department during the course of the Plaintiff's employment therein.

13. Plaintiff holds a bachelors of science degree in marketing, and is a master degree candidate, lacking only the completion of her thesis.

14. CCSN offered payment of books and credited classes for qualifying employees, as a benefit for working for CCSN including payment of Plaintiff's tuition and books for her masters program.

15. CCSN paid for Plaintiff's books and classes when she was initially employed. This perquisite was subsequently changed based upon retaliatory actions taken against the Plaintiff by Tomlinson and CCSN.

16. CCSN is an institution of higher education; however, notwithstanding, Plaintiff was the only classified employee throughout CCSN's campuses and sites seeking a master's degree.

17. Plaintiff has remained in CCSN's employ continually since the date she was hired herein, Peacock was employed as Associate Vice President of Human Resources at CCSN. At all times pertinent herein, Tomlinson was also employed at CCSN in various capacities.

18. Plaintiff received a telephone call that advised her CCSN was sponsoring a job fair for hotel/casino positions for minorities.

19. Plaintiff shared the information with a Hispanic American co-worker, also in the Human Resources Department.

20. The Hispanic co-worker disseminated an e-mail to other Hispanic employees and students alerting them to the job fair. This e-mail resulted in numerous Hispanics employees and students appearing at the job fair's designated site on the CCSN main campus.

21. The Hispanic students and employees who appeared at the job fair were turned away by a CCSN employee, Lonnie Wright, who indicated that the job fair was for African-Americans only.

4

22. Mr. Wright investigated and determined that Plaintiff had disseminated the information regarding the job fair her co-worker. Mr. Wright threatened Plaintiff causing her to be in fear of losing her job, especially since she was a probationary employee.

23. An investigation was commenced by CCSN, which found that Mr. Wright had not taken any adverse action. Richard Moore, then CCSN's President, subsequently promoted Mr. Wright to a higher position, notwithstanding Mr. Wright's wrongful actions.

24. Mr. Moore and other senior CCSN employees instituted a campaign of retaliation against Plaintiff and the Hispanic co-worker. This campaign included, but was not limited to, failure to promote Plaintiff, failure to even consider Plaintiff for promotion, by not even allowing her to be interviewed, although she was qualified for the positions applied for, and not giving her monetary remuneration commensurate with other employees similarly situated.

## FIRST CAUSE OF ACTION

### (HOSTILE WORK ENVIRONMENT)

25. The allegations contained facts common to all allegations in paragraphs 1-24, inclusive, of this complaint, are incorporated by reference into this paragraph 25.

26. Peacock was hired by CCSN in or about 1999. He became Plaintiff's indirect supervisor, as Associate Vice President of Human Resources.

5

1

2  27. Tomlinson became Peacock's assistant, in the position of "Operations

3  Coordinator." Tomlinson performed clerical duties, as a "professional" employee,

4  although she had only a high school degree, unlike Plaintiff. Tomlinson attempted

5  to interfere with Plaintiff's job responsibilities, although she was not Plaintiff's

6  supervisor.

7

8  28. Peacock maintained an autocratic and inconsistent managerial style: he was

9  also working on his doctoral degree and maintained an erratic work schedule.

10  Plaintiff advised Peacock of Tomlinson's interference with her job

11  responsibilities, but he consistently refused to address the issues brought to his

12  attention. Peacock's lack of response to Tomlinson's actions caused Plaintiff

13  to suffer job-related stress.

14

15  29. On January 24, 2000, Plaintiff filed a grievance against Tomlinson with

16  Human Resources Department, based upon Tomlinson's actions. Grievances

17  filed at CCSN are handled through the Human Resources Department, and by

18  extension, Peacock, as Associate Vice President of Human Resources.

19  Notwithstanding, Peacock failed to resolve Plaintiff's grievance for more than

20  a year, although grievances are to be promptly resolved pursuant to the

21  guidelines in the UCCSN and CCSN handbooks. Peacock allowed the hostile

22  work environment to continue.

23

24  30. In July 2000, Plaintiff was allowed to transfer to a different position under a

25  new supervisor. Plaintiff thrived in the new position and received accolades

26  and stellar job performance reviews from her new supervisor. Plaintiff was

27  also reclassified as a "professional" employee. Plaintiff's responsibilities

28

6

increased. Plaintiff's responsibilities included regular meetings with other
representatives of UCCSN in various campuses in Nevada. She was also
tasked with overseeing the wellbeing of staff and faculty at the 19 campuses
comprising CCSN. Plaintiff was also given a cellular telephone, together with
other perquisites to enable to perform her new responsibilities. Plaintiff was
also promised a Ten Thousand Dollar to Fifteen Thousand Dollar salary
increase, based upon the amount budgeted for the following fiscal year. The
salary increase was based on the budget established by the UCCSN Risk
Manager.

31. Plaintiff's new supervisor left CCSN. Peacock lobbied CCSN's
administration to have Plaintiff's position placed under his supervision,
although he had no background in Plaintiff's field. Plaintiff specifically
requested that she not report to Peacock, since her new responsibilities were
not part of the Human Resources Department, and especially in light of her
past problems with Tomlinson and Peacock. Additionally, Peacock had yet to
resolve the outstanding grievance from January 2000 against Tomlinson.
Notwithstanding, Plaintiff was transferred to Peacock's supervision, although
her office was located on another floor of the building.

32. Plaintiff scheduled a vacation in October 2001. She specifically requested that
Tomlinson not interfere with her department, as she was not familiar with
Plaintiff's work and files, and should have no reason to interfere with it.
Additionally, Plaintiff had made alternate arrangements to insure her job
responsibilities were covered.

7

1

2      33. Plaintiff discovered Peacock had had difficulties with Tomlinson while

3          Plaintiff had been away, and had removed Tomlinson from his office area and

4          into Plaintiff's office. Plaintiff returned from her vacation earlier than

5          expected. Tomlinson had disrupted Plaintiff's office by changing the

6          telephone lines, rearranging the furniture, giving misinformation to employees

7
           who were responsible to Plaintiff, and disorganizing Plaintiff's files. Plaintiff
8
9          filed a complaint against Tomlinson with Peacock, as a result of these actions.

10         Peacock never resolved the issues that were the basis of the complaint.

11         Moreover, the hostile work environment became more intolerable.

12     34. On or about January 31, 2002 Plaintiff raised the issue of the raise her prior

13         supervisor had promised, and had budgeted. Peacock stated he would direct a

14
           subordinate to conduct a UCCSN system-wide survey to determine whether
15
16         there was a discrepancy in pay. Peacock's subordinate advised Plaintiff she

17         had conducted the survey and had given Peacock the results during the week

18         of February 11, 2002, but Peacock failed to respond to Plaintiff, although he

19         had promised a resolution by April 3, 2002.

20
       35. On April 24, 2002, Peacock exploded at Plaintiff in a tirade following a staff
21
22         meeting. Peacock attempted to denigrate Plaintiff very loudly in the presence

23         of others and told Plaintiff he did not value her opinion. Peacock demanded

24         Plaintiff meet with him, where he loudly demanded his office door remain

25         open. Peacock berated Plaintiff for having filed the grievance and complaint

26         against Tomlinson. He also gave Plaintiff a memorandum that imposed many

27

28

8

1

2    mandates designed to micro-manage Plaintiff, and make her job more

3    difficult. These mandates included, but were not limited to the following:

4

5        • Plaintiff was required to request the UCCSN Risk Manager formally

6          request that Peacock allow her attendance at meetings (her attendance had

7          previously been required).

8

9        • Minimize business lunches, although Peacock had never previously raised

10         any issues regarding Plaintiff abusing business lunches. Moreover,

11         Peacock had always approved Plaintiff's mileage reimbursement for

12         business lunches.

13
        • Peacock demanded Plaintiff turn in her cellular telephone, although she
14
          was still required to travel out of town and to each of the campuses on
15
          CCSN business.
16

17   36. The Individual Defendants instituted a campaign of retribution against

18       Plaintiff. Peacock ordered Tomlinson to maintain an informal personnel file

19       on Plaintiff and another co-worker also reporting to Peacock (the "Stealth

20       file"). The Stealth file was maintained in a locked file cabinet that only the
21
         Individual Defendants had the key. The Individual Defendants also regularly
22
         sent a student worker and other staff members to spy on Plaintiff, report on
23
24       her activities, and otherwise "keep tabs" on her.

25

26           Wherefore, Plaintiff prays for judgment against Defendants as follows:

27

28

                                        9

a. Declare the above alleged acts of Defendants constitute a breach of her rights and in violation of Title VII of the Civil Rights Act of 1964 and in violation of the laws of the state of Nevada;

b. Direct CCSN to expunge any derogatory information found in Plaintiff's official file, and destroy any unofficial, without incorporating its contents in Plaintiff's official employment records;

c. An award of damages for all retaliatory, discriminatory, and negligent and wrongful acts of Defendants;

d. An award of damages sustained by Plaintiff a result of emotional distress, including medical expenses, as a result of the tort of out rage, breach of contract, and inv of privacy;

e. An award of damages due to the wrongful acts of Peacock and Tomlinson;

f. For punitive damages in an amount to be determined;

g. For cost of suit herein incurred;

h. For reasonable attorney's fees; and

i. For such other and further relief as the Court may deem just and proper.

The Law Office of Andras F. Babero

By: _____
Andras F. Babero, Esquire
8290 West Sahara, Suite 150
Las Vegas, Nevada 89117